1   THE CONSUMER LAW GROUP
    Alan M. Mansfield (SBN 125998)
2   alan@clgca.com
    9466 Black Mountain Road, Suite 225
3   San Diego, CA 92126
    Tel: (619) 308-5034
4   Fax: (888) 341-5048

5   THE MAURIELLO LAW FIRM, APC
    Thomas D. Mauriello
6   tomm@maurlaw.com
    1181 Puerta Del Sol, Suite 120
7   San Clemente, CA 92673
    Tel: (949) 542-3555
8   Fax: (949) 606-9690

9   WHATLEY DRAKE & KALLAS, LLC
    Joe R. Whatley, Jr., Esq.
10  jwhatley@wdklaw.com
    Edith M. Kallas, Esq.
11  ekallas@wdklaw.com
    Patrick J. Sheehan
12  psheehan@wdklaw.com
    1540 Broadway, 37th Floor
13  New York, NY 10036
    Tel: (212) 447-7070
14  Fax: (212) 447-7077

15  *Attorneys for Plaintiff*

16            UNITED STATES DISTRICT COURT

17            CENTRAL DISTRICT OF CALIFORNIA

18                   WESTERN DIVISION

19  MICHELLE WEEKS, individually          ) Case No. 2:09-cv-5835-DSF
    and on behalf of all others similarly )
20  situated,                             ) CLASS ACTION
                                          )
21            Plaintiff,                  ) THIRD AMENDED COMPLAINT
                                          ) FOR VIOLATION OF:
22       v.                               )
                                          ) 1)  UNLAWFUL BUSINESS ACTS
23  MEAD JOHNSON & COMPANY,               )     & PRACTICES (Cal. Bus. &
                                          )     Prof. Code §17200);
24            Defendant.                  ) 2)  UNFAIR BUSINESS ACTS &
                                          )     PRACTICES (Cal. Bus. & Prof.
25                                        )     Code §17200);
                                          ) 3)  FRAUDULENT BUSINESS
26                                        )     ACTS & PRACTICES (Cal. Bus
                                          )     & Prof. Code §17200);
27                                        ) 4)  MISLEADING AND
                                          )     DECEPTIVE ADVERSISING
28                                        )     (Cal. Bus. & Prof. Code §17500;
                                          ) (Cont'd)
                                          )

2010 JUL 19  PM 5:07
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
FILED
BY:

COPY

|  |  |  |
|---|---|---|
| ) | 5) | **CONSUMERS LEGAL REMEDIES ACT (Cal. Civ. Code §1750);** |
| ) | 6) | **BREACH OF WARRANTY;** |
| ) | 7) | **COMMON COUNTS, UNJUST ENRICHMENT AND DECLARATORY RELIEF** |
| ) | | **DEMAND FOR JURY TRIAL** |

Plaintiff Michelle Weeks ("Plaintiff") brings this action against Mead Johnson & Company ("Mead Johnson"), both on her own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P."), on behalf of a class of other similarly situated persons as defined below.  Plaintiff alleges the following facts upon information and belief, which facts are likely to have evidentiary support after an opportunity for further investigation and discovery, except as to paragraphs pertaining to Plaintiff's own actions or except where otherwise so identified, which are alleged upon personal knowledge.

## I.   NATURE OF THE ACTION

1.   Mead Johnson produces, markets and sells Enfamil® brand infant formula (the "Product"), which contains LIPIL®, Mead Johnson's name for a blend of two lipid fatty acids found in breast milk, docosahexaenoic acid ("DHA") and arachidonic acid ("ARA").  Mead Johnson claims on the label of its Product and in other promotional materials, as detailed herein, that the DHA and ARA contained in LIPIL® promotes brain and eye development in infants.

2.   Mead Johnson's Product enjoys significant brand recognition and sells at premium prices.  However, over the last several years, Mead Johnson has faced tough competition from comparable but lower-priced stored brand products.

3.   Unable to meet this competition with superior quality, and unwilling to compete on price, Mead Johnson sought to increase sales by falsely or misleadingly representing to consumers that the Product was the only infant formula product that contained DHA and ARA and that the Product was the only infant formula product that was clinically proven to improve brain and eye function in infants.

2

4.      Both of these claims are deceptive and likely to deceive consumers.  In fact, other brands of infant formula, including lower-priced store brands, contain DHA and ARA in amounts equal to or greater than those contained in Mead Johnson's Product and are no less effective than Mead Johnson's Product in promoting brain and eye development in infants.  Moreover, Mead Johnson failed to disclose to consumers the material facts that:  (1) the formulation of its Product has changed 19 times since its purported ability to promote brain and eye development was clinically tested, (2) the testing in question only compared the Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without DHA and ARA and no other brands, and (3) the testing in question actually establishes that any infant formula product with the same levels of DHA and ARA as that in Mead Johnson's Product would be equally effective in promoting brain and eye development in infants.

5.      Because of Mead Johnson's misrepresentations and omissions regarding the nature of its Product as justifying a premium price for the Product, Plaintiff and Class members paid more for Mead Johnson's Product than they otherwise would have, mistakenly believing that they were purchasing the only infant formula that provides the blend of nutrients essential to the brain and eye development of their babies.  California law prohibits this conduct.

## II.   PARTIES

6.      Plaintiff Michelle Weeks is an individual consumer who, at all times material hereto, was a resident of the County of Ventura in the State of California, and therefore is a "citizen" of California for purposes of diversity.

7.      Mead Johnson & Company is a subsidiary of Mead Johnson Nutrition Company, and is organized and existing under the laws of the State of Delaware with its principal place of business located at 2400 West Lloyd Expressway, Evansville, Indiana 47721.  For the purposes of diversity jurisdiction, Mead Johnson & Company may be considered a "citizen" of either Delaware or Indiana.

3

At all times relevant hereto, Mead Johnson & Company was and is doing business within this District either directly or indirectly through the sales of its products in this District.

8.     At all times herein mentioned, the employees of Mead Johnson, its subsidiaries, affiliates and other related entities, were the agents, servants and employees of Mead Johnson, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment.  Whenever reference in this Complaint is made to any act or transaction of Mead Johnson, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Mead Johnson committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Mead Johnson while actively engaged in the scope of their duties.

## III.     JURISDICTION AND VENUE

9.     This Court has jurisdiction over this class action under 28 U.S.C. §1332(d).  Under the provisions of the Class Action Fairness Act ("CAFA"), there is original jurisdiction in the federal courts for any class action in which any member of the Class is a citizen of a State different from the defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.  Plaintiff believes the total claims of individual class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).  Plaintiff is a citizen of California, whereas Mead Johnson is a citizen of either Indiana or Delaware.  Furthermore, the total number of members of the proposed Class is alleged to be greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).  Therefore, diversity of citizenship exists under CAFA as defined by 28 U.S.C. § 1332(d)(2)(A).

/ / /

/ / /

4

THIRD AMENDED CLASS ACTION COMPLAINT           CASE NO. 2:09-CV-5835-DSF

10.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a significant part of the events giving rise to the claims occurred in this District, and Mead Johnson is subject to personal jurisdiction in this District.

## IV.   FACTUAL ALLEGATIONS

### Mead Johnson And Its Competition In The Infant Formula Market

11.     Mead Johnson is a global manufacturer and producer of infant formula products, with approximately $2.8 billion in sales revenue in 2008 alone.

12.     Mead Johnson has advertised, marketed, distributed and sold the Product since at least 2005.  A material focus of Mead Johnson's promotion of the Product is the presence of LIPIL®, which is nothing more than Mead Johnson's name for a blend of DHA and ARA, two lipid fatty acids that are naturally found in breast milk and which Mead Johnson claims promote brain and eye development in infants.

13.     Recently, Mead Johnson has seen significant competition from lower-priced brands, particularly store brands.  This is evidenced by Mead Johnson Nutrition Company's Initial Public Offering (IPO) Prospectus, SEC Registration No. 333-156298, dated February 10, 2009 and available at http://www.sec.gov/Archives/edgar/data/1452575/000119312509025593/d424b4.htm:

> "In periods of economic uncertainty, consumers tend to shift their purchases from our higher-priced premium products to lower-priced products, including private label and store brand products.  We believe private label and store brand product manufacturers have continued to gain market share in the United States over the past 12 months."  Prospectus at 16.
>
> ****
>
> "[W]e face significant competition from domestic producers and private label, store and economy brand manufacturers."  *Id.* at 48.

/ / /

THIRD AMENDED CLASS ACTION COMPLAINT          CASE NO. 2:09-CV-5835-DSF

14. In view of this competition, Mead Johnson sought to "sustain the strength of [its] brands" by improving "consumer perception" of the "superior nutritional benefits" of their Product. *Id.*

15. However, rather than actually provide superior nutritional benefits in its Product and offer consumers increased value for its premium price, Mead Johnson instead chose to engage in a concerted effort to disparage the goods of its competitors by using false or deceptive representations of fact in an effort to mislead consumers into believing that its Product contains a unique blend of nutrients, when in fact it contains the same nutrients in the same quantities as other, less expensive brands offered by its competitors, including private labels and store brands.

**Mead Johnson's Deceptive Product Packaging and Labeling**

16. Since at least 2008, Mead Johnson's Product packaging and labeling claimed that "LIPIL® is a blend of DHA and ARA, important nutrients also found in breast milk that promote brain and eye development." *See* Exhibit A, attached hereto (a color copy of the labeling from a can of the Product purchased by Plaintiff in February 2009) and incorporated herein by reference. The packaging and labeling further claimed that "Enfamil® LIPIL® is the only infant formula shown in independent clinical studies to improve baby's brain and eye development." In smaller print, below this statement, is the qualifier "vs. same routine formula without DHA and ARA. Measured at 12 and 18 months." In addition, just below the list ingredients (which noted the presence of DHA and ARA at the very bottom), the label on the same can of the Product also claimed, in red print (the most prominent color print on the entire label), that "This scientifically-developed formula is not available as a store brand."

17. Through the above statements on the Product packaging and labeling, Mead Johnson uniformly represented, either expressly or by implication, that the Product was the only infant formula product that contained DHA and ARA and that

6

the Product was the only infant formula that was clinically proven to improve brain and eye function in infants.

18.     These representations are deceptive for multiple reasons.  First, in fact, numerous other brands of infant formula, including lower-priced store brands, contain DHA and ARA in amounts equal to or greater than those contained in Mead Johnson's Product and are no less effective than Mead Johnson's Product in promoting brain and eye development in infants.  Moreover, as detailed below, the DHA and ARA in Mead Johnson's Product are the same as the DHA and ARA included in store brands and, in fact, are provided by the same ingredient supplier.

19.     Mead Johnson failed to disclose to consumers the material facts (necessary to make their other statements not misleading) that:  1) the formulation of its Product has changed 19 times since its purported ability to promote brain and eye development was clinically tested, 2) the testing in question only compared the Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without DHA and ARA and no other brands, and 3) the testing in question actually establishes that any infant formula product with the same levels of DHA and ARA as that in Mead Johnson's Product would be equally effective in promoting brain and eye development in infants.

**Mead Johnson's Other Promotional Materials Reinforce The Deceptive Statements On Its Packaging and Labeling**

20.     The deceptive statements made on Mead Johnson's packaging and labeling were part of a cumulative, long-term campaign of deceptive advertising and misrepresentations to consumers of its Product.  Since at least 2008, the deceptive statements made on Mead Johnson's product packaging and labeling were reinforced in other promotional materials disseminated to consumers.

21.     For example, a print advertisement disseminated by Mead Johnson during the relevant time period similarly claimed that "Only Enfamil has LIPIL, our blend of DHA and ARA, important nutrients found in breast milk," and that "it's

7

the only formula shown in published independent clinical studies to **[i]mprove brain development** [and] **[i]mprove eye development**." *See* Exhibit B, attached hereto and incorporated herein by reference (emphasis in original).

22.   Another example of a print advertisement disseminated by Mead Johnson during the relevant time period read as follows:  "So choose Enfamil LIPIL—the only infant formula that's clinically shown to improve vision." *See* Exhibit C, attached hereto and incorporated herein by reference.   The same advertisement contained an image labeled "Visual acuity at 12 months" divided into two parts, one part blurry, and labeled "20/41 Vision—Without LIPIL" and the other part clear and labeled "20/28 Vision—with LIPIL."

23.   In addition, during the relevant time period, on Mead Johnson's website dedicated to the Product, www.enfamil.com, there was a Product FAQ link that contained the following statements:

"Q:   What are fatty acids? Why are they important for my baby's development?"

"A:  … Enfamil has LIPIL, our blend of DHA and ARA, important nutrients that promote brain and eye development."

\*\*\*

"Q:  "What are DHA and ARA?"

"A:  … Enfamil has LIPIL, our blend of DHA and ARA, important nutrients also found in breast milk that promote brain and eye development."

"Q:  "How does my baby get DHA and ARA?"

"A:  …Only Enfamil has LIPIL, a blend of DHA and ARA, important nutrients that support brain and eye development."

*See* Exhibit D, attached hereto and incorporated by reference.

24.   Mead Johnson further discouraged consumers from purchasing less expensive brands of infant formula by disparaging the infant formula sold by its

8

competitors in a direct mailer sent to approximately 1.6 million new mothers throughout the United States between mid-2008 and mid-2009.   The mailer contained the following statements:

> "It may be tempting to try a less expensive store brand, but only Enfamil LIPIL is clinically proven to improve brain and eye development. . . .   So before you try a store brand of formula, remember that a full year* of Enfamil LIPIL goes a long way to nourishing the dreams you have for your little one."

***

> "En-fact:  Enfamil LIPIL's unique formulation is not available in any store brand."

***

> "Store brands may cost less, but Enfamil® gives your baby more."

*See* Exhibit E, attached hereto and incorporated by reference.

25.   As it does on its Product packaging and labeling, in these advertisements, Mead Johnson uniformly suggests to consumers that the Product is the only infant formula product that contained DHA and ARA and/or that the Product was the only infant formula that was clinically proven to improve brain and eye development in infants.   These representations are deceptive for the reasons set forth in paragraphs 18 and 19 above.

**The Representations At Issue Have Already Been Found To Be Misleading In Violation of the Lanham Act 15 U.S.C. § 1051, *et seq.***

26.   In April 2009, Mead Johnson's competitor PBM Products, LLC ("PBM"), the leading manufacturer of store brand infant formula products, filed suit against Mead Johnson in the United States District Court for the Eastern District of Virginia for false advertising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, based on the dissemination of the mailer referenced above.   Among other things, PBM alleged, as Plaintiff does in this action, that Mead Johnson falsely claimed

9

that only Mead Johnson's Product was clinically proven to provide enhanced visual and cognitive development and that store brands have not been so proven.  PBM further alleged, as Plaintiff does in this action, that Mead Johnson stated or implied that store brand products do not contain DHA and ARA, when in fact many store brand infant formula products do contain DHA and ARA.  Indeed, as PBM alleged, the DHA and ARA in PBM's infant formula products is supplied by Martek, the same supplier used by Mead Johnson, and the only FDA-approved supplier of DHA and ARA for use in infant formula products.

27.    At trial, the evidence adduced the material facts that: (1) the formulation of Mead Johnson's Product has changed 19 times since its purported ability to promote brain and eye development was clinically tested, (2) the testing in question only compared the Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without DHA and ARA and no other brands; and (3) the testing in question actually establishes that any infant formula product with the same levels of DHA and ARA as that in Mead Johnson's Product -- including store brands -- would be equally effective in promoting brain and eye development in infants.

28.    During the course of that trial, PBM submitted two consumer surveys that provide further support to Plaintiff's allegations that the representations at issue were material to consumers and were likely to deceive consumers.  The first survey was a survey designed to determine what messages were being received by consumers from the mailer, which is attached hereto as Exhibit E and which contained several statements substantially similar to the statements set forth on the Product packaging and labeling as set forth above and in Exhibit A.  That survey indicated that the mailer was conveying the false messages that Enfamil® LIPIL® contained ingredients (particularly DHA and ARA) that are not found in store brands and that clinical tests were done comparing Enfamil® LIPIL® to store brands to show that Enfamil® LIPIL® provides better visual acuity – the very same

10

deceptive messages challenged in this action.  A second survey designed to determine the mailer's impact on consumers' purchase intent indicated that the statements in the mailer had a negative impact on a consumer's likelihood to consider purchasing store brand formula, thereby operating to disparage the goods of Mead Johnson's competitors by the use of false or misleading representations of fact.

29.    On November 11, 2009, a jury rendered a verdict finding Mead Johnson liable for false advertising under the Lanham Act and awarded PBM $13.5 million.  In an order dated March 12, 2010, the court found, among other things, that the evidence supported a finding that claims that "only Enfamil is clinically proven to improve brain and eye development in infants" – substantially similar to the claim appearing on the Product packaging and labeling challenged by Plaintiff in this action -- were "misleading" and held that the making of such claims should be enjoined.

30.    Mead Johnson's claims, either express or implied, that the Product was the only infant formula product that contained DHA and ARA and that the Product was the only infant formula that was clinically proven to improve brain and eye function in infants are, and have already been found to be, likely to mislead or confuse and convey a false or misleading impression to the reasonable consumers targeted by Mead Johnson's advertising attached hereto as Exhibits A through E, that Mead Johnson's Product contained superior ingredients not contained in less expensive brands, including store brands, causing consumers to pay more for Mead Johnson's Product than they would have had they known that, in fact, the Product is not the exclusive source of these ingredients and that less expensive store brand products contain the same (if not greater) amounts of DHA and ARA.

**Allegations Relating to Plaintiff's Purchase of the Product**

31.    On personal knowledge, Plaintiff purchased Mead Johnson's Product for her infant in approximately December 2008 from a Target store located on 4200

THIRD AMENDED CLASS ACTION COMPLAINT          CASE NO. 2:09-CV-5835-DSF

East Main Street, Ventura, California 93003, and subsequently purchased the Product 6 to 10 times from various stores in Colorado up until February 2009.

32.     On personal knowledge, the statements contained in Mead Johnson's Product packaging and labeling as set forth in detail above were a substantial factor in Plaintiff's deciding to purchase the Product rather than similar but less expensive store brand products such as those offered by Target.  Specifically, at the time she first purchased the Product in December 2008, Plaintiff read the claims on the Product's packaging and labeling detailed above in paragraph 16, which are similar in all material respects to Exhibit A (the packaging and labeling from the last can of the Product purchased by Plaintiff), including the claims that "LIPIL® is a blend of DHA and ARA, important nutrients also found in breast milk that promote brain and eye development," that "Enfamil® LIPIL® is the only infant formula shown in independent clinical studies to improve baby's brain and eye development," and the statement printed in red ink that "[t]his scientifically-developed formula is not available as a store brand."  Further, each time Plaintiff purchased the Product, the packaging and labeling was similar in all material respects to the labeling and packaging set forth above in paragraph 16 and Exhibit A.

33.     On personal knowledge, these claims on the Product's packaging and labeling were material to her and reasonably led her to believe that the Product was unique in terms of the presence and levels of DHA and ARA as compared to less expensive store brands.

34.     Plaintiff was reasonable in believing Mead Johnson's representations in making her purchasing decisions, given Mead Johnson's reputation as a reliable company with a specialized expertise in infant nutrition.

35.     On personal knowledge, as a result of Mead Johnson's deceptive acts and practices, Plaintiff was misled into purchasing the Product and paying substantially more (approximately twice as much) than she would have paid for comparable products available from other companies.  She has thereby suffered

12

injury in fact and a loss of money or property as a result of Mead Johnson's conduct. Had the true facts been accurately disclosed to her, she would not have purchased the Product at the prices that she did and would have purchased one of the less expensive but comparable competitor brands available on the market that Mead Johnson had disparaged through its false and misleading representations of fact.

## V.   CLASS ALLEGATIONS

36.     Pursuant to F.R.C.P. 23, Plaintiff brings this action on behalf of herself and a Class of persons comprised of all consumers who purchased the Product for personal, family or household purposes since August 11, 2005. Excluded from the Class are: (1) Mead Johnson and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the Class; and (3) the judge(s) to whom this case is assigned and any immediate family members thereof.

37.     Based on the annual sales of Mead Johnson's Product and the popularity of the Product, the number of purchasers of the Product would likely be in the many thousands of individual consumers, thereby making individual joinder impracticable. The Class is therefore so numerous that joinder of all members would be impracticable. In addition, Mead Johnson's advertising and promotional practices as detailed above were supplied uniformly to members of the Class throughout the relevant time period, so that the questions of law and fact detailed herein are common to all members of the Class. All Class members were and are similarly affected by having purchased the Product for its intended and foreseeable purpose as promoted, marketed, advertised, packaged and labeled by Mead Johnson and as set forth in detail above. Questions of law and fact common to the Class therefore exist and predominate over questions affecting only individual members, including, *inter alia*:

(a)     Whether Mead Johnson's acts and practices in connection with the promotion, marketing, advertising, packaging,

13

labeling, distribution and sale of the Product as set forth above were unlawful, deceptive or unfair in any respect, thereby violating California Business and Professions Code § 17200, *et seq.*, California Business and Professions Code § 17500, *et seq.*, and California Civil Code § 1750, *et seq.*;

(b)     Whether Mead Johnson misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling and sale of the Product that were necessary to disclose in order to make their other disclosures of material facts not misleading for want of disclosure of such omitted facts or which disparaged the goods of its competitors as set forth in detail above;

(c)     Whether Mead Johnson breached warranties in the sale of the Product;

(d)     Whether Mead Johnson's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling and sale of the Product unjustly enriched Mead Johnson at the expense of, and to the detriment of, Plaintiff and other Class members; and

(e)     Whether Mead Johnson's conduct as set forth above injured consumers and if so, the extent of such injury.

38.     The claims asserted by Plaintiff in this action are typical of the claims of other Class members as her claims arise from the same course of conduct by Mead Johnson as detailed above, and the relief she seeks is common to other Class members.

39.     Plaintiff will fairly and adequately represent and protect the interests of the Class members.  Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

14

THIRD AMENDED CLASS ACTION COMPLAINT          CASE NO. 2:09-CV-5835-DSF

40.     Certification of this class action is appropriate under F.R.C.P. 23(b)(2) and (3).  The questions of law or fact common to the Class members as detailed above predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other methods available for the fair and efficient group-wide adjudication of these claims.  Absent a class action remedy, it would be highly unlikely that other Class members would be able to protect their own interests because the cost of litigation through individual lawsuits would exceed any expected recovery.  Further, given the large number of consumers of the Product, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications. Certification is also appropriate because Mead Johnson has acted or refused to act, and continues to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

41.     A  class  action  is  an  appropriate  method  for  the  group-wide adjudication of this controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.  The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be claimed with regard to the management of this action.

## **FIRST CAUSE OF ACTION**

(Unlawful Business Acts and Practices

Business and Professions Code § 17200, *et seq.*)

42.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

/ / /

THIRD AMENDED CLASS ACTION COMPLAINT          CASE NO. 2:09-CV-5835-DSF

43. This cause of action is brought to redress Mead Johnson's unlawful business acts and practices pursuant to California Business and Professions Code § 17200, *et seq.* based on Mead Johnson's violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the California Sherman Food, Drug and Cosmetics Law, California Health & Safety Code § 109875, *et seq.* (the "Sherman Law"), Business And Professions Code § 17500, *et seq.* (the "False Advertising Law" or "FAL"), the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") and systematic breach of warranty. Plaintiff reserves the right to identify additional violations of laws as circumstances and further investigation warrants.

44. As detailed above at paragraphs 26-30, the representations at issue here have already been found to be misleading in violation of the Lanham Act. These representations are therefore also an unlawful business practice pursuant to California Business & Professions Code § 17200, *et seq.*

45. Mead Johnson's advertising, packaging, labeling, distributing and selling of the Product violated the Sherman Law, which declares, in relevant part, that any food is misbranded if its labeling is false or misleading and further provides that it is unlawful for any person to misbrand any food or sell any misbranded food. Cal. Health & Saf. Code, § 110765.

46. The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." Cal. Health & Saf. Code § 109995. Mead Johnson is a corporation and, therefore, a "person" within the meaning of the Sherman Law.

47. As set forth in detail above, Mead Johnson advertised, packaged, labeled, distributed and sold the Product as the only infant formula product that

/ / /

16

THIRD AMENDED CLASS ACTION COMPLAINT          CASE NO. 2:09-CV-5835-DSF

contained DHA and ARA and as the only infant formula product that was clinically proven to improve brain and eye function in infants.

48.    Both of these claims are false and misleading for the reasons set forth above.  In fact, other brands of infant formula, including lower-priced store brands, contain DHA and ARA in amounts equal to or greater than those contained in Mead Johnson's Product and are no less effective than Mead Johnson's Product in promoting brain and eye development in infants.  Moreover, Mead Johnson failed to disclose to consumers the material facts that: (1) the formulation of its Product has changed 19 times since its purported ability to promote brain and eye development was clinically tested, (2) the testing in question only compared the Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without DHA and ARA and no other brands, and (3) the testing in question actually establishes that any infant formula product with the same levels of DHA and ARA as that in Mead Johnson's Product would be equally effective in promoting brain and eye development in infants.

49.    Mead Johnson's business acts and practices are also unlawful under the CLRA, the FAL, and involve a systematic breach of warranty, for the reasons detailed more fully herein.

50.    The above-described unlawful business acts and practices of Mead Johnson present a continuing threat and reasonable likelihood of deception to members of the Class in that Mead Johnson has systematically engaged in such acts or practices by means of its continued misleading marketing, advertising, packaging, labeling, distributing and selling of the Product.

51.    As a result of the unlawful business acts practices described above, Plaintiff and other members of the Class, pursuant to California Business and Professions Code § 17203, are entitled to an order enjoining such conduct on the part of Mead Johnson and such other orders and judgments as may be necessary to disgorge Mead Johnson's ill-gotten gains by restoring to any person in interest all

17

or any excess money paid for the Product as a result of the unlawful business acts and practices of Mead Johnson.

## SECOND CAUSE OF ACTION

(Unfair Business Acts and Practices

Business and Professions Code § 17200, *et seq*.)

52.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

53.     Mead Johnson's acts and practices, as described above, constitute unfair business acts and practices.

54.     There is no countervailing benefit to consumers or competition by deceptively promoting, marketing, advertising, packaging and labeling the Product in the manner set forth above.  The harm to consumers is substantial as they are misled into paying more for a product that is substantially similar if not identical in terms of the material characteristics focused upon by Mead Johnson in its promotion of the Product.  Contrary to Mead Johnson's claims that the Product is superior to store brands, insofar as the presence and levels of DHA and ARA are concerned, this is not the case.

55.     The gravity of the consequences of Mead Johnson's conduct as described above outweighs any justification, motive or reason therefor, particularly considering the available legal alternatives that exist in the marketplace, is immoral, unethical, unscrupulous, or offends established public policy, its prohibition is tethered to a legislatively declared policy as reflected in the laws detailed herein, and/or its conduct is substantially injurious to Plaintiff and other members of the Class.

56.     As a result of the unfair business acts practices described above, Plaintiff and other members of the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such conduct on the part of Mead Johnson and such other orders and judgments as may be necessary to disgorge

18

Mead Johnson's ill-gotten gains by restoring to any person in interest all or any excess money paid for the Product.

## THIRD CAUSE OF ACTION

(Fraudulent Business Acts and Practices

Business and Professions Code § 17200, *et seq.*)

57.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

58.     Mead Johnson's acts and practices, as described above, constitute fraudulent business practices under California Business and Professions Code § 17200, *et seq.*

59.     As set forth in detail above, Mead Johnson promoted, marketed, advertised, packaged and labeled the Product as the only infant formula product that contained DHA and ARA and as the only infant formula product that was clinically proven to improve brain and eye function in infants.

60.     For the reasons detailed above, Mead Johnson's acts and practices were likely to deceive its targeted audience (parents of newborn infants) because other brands of infant formula, including lower-priced store brand products, contain DHA and ARA in amounts equal to or greater than those contained in Mead Johnson's Product and are no less effective than Mead Johnson's Product in promoting brain and eye development in infants.  Moreover, Mead Johnson failed to disclose to consumers the material facts that: (1) the formulation of its Product has changed 19 times since its purported ability to promote brain and eye development was clinically tested, (2) the testing in question only compared the Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without DHA and ARA and no other brands, and (3) the testing in question actually establishes that any infant formula product with the same levels of DHA and ARA as that in Mead Johnson's Product would be equally effective in promoting brain and eye development in infants.

THIRD AMENDED CLASS ACTION COMPLAINT          CASE NO. 2:09-CV-5835-DSF

61.    As a result of the fraudulent business acts and practices described above, Plaintiff and other members of the Class, pursuant to California Business and Professions Code § 17203, are entitled to an order enjoining such conduct on the part of Mead Johnson, and such other orders and judgments as may be necessary to disgorge Mead Johnson's ill-gotten gains by restoring to any person in interest all or any excess money paid for the Product as a result of the wrongful conduct of Mead Johnson.

## **FOURTH CAUSE OF ACTION**

(Misleading or Deceptive Advertising

Business and Professions Code § 17500, *et seq.*)

62.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

63.    Plaintiff asserts this cause of action based on violations of California Business and Professions Code § 17500, *et seq.* resulting from Mead Johnson's misleading or deceptive advertising of the Product as detailed above.

64.    Mead Johnson offered the Product for sale to Plaintiff and other members of the Class by way of commercial marketing and advertising, the Internet, product packaging and labeling, and other promotional materials.  These materials consistently and uniformly misrepresented or omitted material facts in regard to the Product being the only infant formula product that contained DHA and ARA and that was clinically proven to improve brain and eye function in infants.

65.    In fact, other brands of infant formula, including lower-priced store brands, contain DHA and ARA in amounts equal to or greater than those contained in Mead Johnson's Product and are no less effective than Mead Johnson's Product in promoting brain and eye development in infants.  Moreover, Mead Johnson failed to disclose to consumers the material facts that: (1) the formulation of its Product has changed 19 times since its purported ability to promote brain and eye development was clinically tested, (2) the testing in question only compared the

20

Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without DHA and ARA and no other brands, and (3) the testing in question actually establishes that any infant formula product with the same levels of DHA and ARA as that in Mead Johnson's Product would be equally effective in promoting brain and eye development in infants.  Mead Johnson, in the exercise of reasonable care, should have known that these statements and omissions were misleading and deceptive.

66.    Said advertisements and promotional materials come within the definition of advertising as contained in California Business and Professions Code § 17500, *et seq.* in that such promotional materials were intended as inducements to purchase the Product and are statements disseminated to Plaintiff and other members of the Class and were intended by Mead Johnson to reach and be considered by members of the Class.

67.    In furtherance of said plan and scheme, Mead Johnson has prepared and distributed via commercial marketing and advertising, the Internet, product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represent the true nature and characteristics of the Product.  Consumers, including Plaintiff and other members of the Class, were among the intended targets of such representations.

68.    In disseminating the misleading and deceptive statements detailed above to consumers, including Plaintiff and members of the Class, Mead Johnson was and is likely to deceive reasonable consumers targeted by such conduct, including Plaintiff and other members of the Class, by misleading them as to material characteristics, uses and benefits of the Product, and by disparaging the goods offered by its competitors based on false or misleading representations of fact, in violation of California Business and Professions Code § 17500, *et seq.*

69.    As a result of the above violations of California Business and Professions Code § 17500, *et seq.*, Plaintiff and the Class, pursuant to California

21

Business and Professions Code § 17535, are entitled to an order of this Court enjoining such conduct on the part of Mead Johnson, and such other orders and judgments as may be necessary to disgorge Mead Johnson's ill-gotten gains by restoring to any person in interest all or any excess money paid for the Product as a result of the wrongful conduct of Mead Johnson.

## FIFTH CAUSE OF ACTION

(Consumers Legal Remedies Act - Civil Code § 1750, *et seq.*)

70.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

71.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. (the "CLRA").

72.     Mead Johnson's actions, representations and conduct detailed above are subject to the provisions of the CLRA because they involve transactions that have resulted in or are intended to result in the sale of goods to consumers.

73.     Plaintiff and other members of the Class are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

74.     The Product that Plaintiff and other members of the Class purchased is a "good" within the meaning of California Civil Code § 1761(a).

75.     As set forth in detail above, Mead Johnson advertised, packaged, labeled, distributed and sold the Product based on the assertion, either expressly or impliedly, that the Product was the only infant formula product that contained DHA and ARA and was the only infant formula product that was clinically proven to improve brain and eye function in infants.  Plaintiff and Class members acted positively in response to such statements by purchasing the Product at the prices that they did.

76.     In fact, other brands of infant formula, including lower-priced store brands, contain DHA and ARA in amounts equal to or greater than those contained in Mead Johnson's Product and are no less effective than Mead Johnson's Product

22

THIRD AMENDED CLASS ACTION COMPLAINT          CASE NO. 2:09-CV-5835-DSF

in promoting brain and eye development in infants.  Moreover, Mead Johnson failed to disclose to consumers the material facts that: (1) the formulation of its Product has changed 19 times since its purported ability to promote brain and eye development was clinically tested, (2) the testing in question only compared the Product (i.e., Enfamil® with LIPIL®) to a prior formulation of Enfamil® without DHA and ARA and no other brands, and (3) the testing in question actually establishes that any infant formula product with the same levels of DHA and ARA as that in Mead Johnson's Product would be equally effective in promoting brain and eye development in infants.

77.    By making such misrepresentations and omitting material facts relating to the Product as detailed above, Mead Johnson violated California Civil Code § 1770(a), as it misrepresented that the Product had characteristics, ingredients, uses, benefits or quantities that were unique when they were not, were of a particular standard, quality or grade when they were not, disparaged the goods of its competitors' products by false or misleading representations of fact, and/or had been supplied in accordance with previous representations when they were not. *See* Cal. Civ. Code §§ 1770(a)(5), (7),  (8) and (16).

78.    As a result of Mead Johnson's acts and practices as detailed above that are declared to be unlawful under the above sections of the CLRA, Plaintiff and other members of the Class suffered damage by having purchased and paid for the Product at the prices that they did.

79.    Plaintiff has provided Mead Johnson written notice of alleged violations of the CLRA pursuant to California Civil Code § 1782(a).  Mead Johnson failed to provide appropriate relief for its violation of the CLRA to Plaintiff and other Class members within 30 days of the date of receipt of this notification.

80.    Pursuant to California Civil Code § 1780(a)(1), as a result of Mead Johnson's acts and practices as detailed above, Plaintiff and other members of the

23

Class are entitled to actual damages, and statutory damages at $1,000. Plaintiff and other members of the Class are also entitled to equitable monetary relief, including restitution, pursuant to California Civil Code § 1780(a)(3).

81.     Pursuant to California Civil Code § 1780(a)(2), Mead Johnson should be enjoined from continuing to employ the unlawful methods, acts and practices alleged herein to prevent any future harm to other members of the Class and the public, as well as any other relief the court deems proper.

82.     In addition, as Mead Johnson has engaged in conduct that is a result of oppression, fraud or malice, pursuant to California Civil Code § 1780(a)(4), Plaintiff and the Class members also seek exemplary damages.

83.     Plaintiff is also entitled to an award of attorneys' fees and costs pursuant to California Civil Code § 1780(d).

### SIXTH CAUSE OF ACTION

(Breach of Warranty)

84.     Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

85.     By virtue of disseminating the labeling, advertising and other promotional materials for the Product as detailed above, Mead Johnson provided Plaintiff and other members of the Class with written express warranties that the Product was the only infant formula product that contained DHA and ARA and that the Product was the only infant formula that was clinically tested and proven to improve brain and eye function in infants. The Product also contained implied warranties that such Product was merchantable and would pass without objection in the trade or industry. However, as detailed above, these Products breached Mead Johnson's express warranties and are not merchantable because the Product was not the only infant formula product that contained DHA and ARA and was not the only infant formula that was clinically proven to improve brain and eye function in infants. As the Product is a foodstuff, privity is not required to assert such claims

24

against Mead Johnson.   Prior notice of the breach of such warranties has been provided by Plaintiff to Mead Johnson.

86.    By virtue of the breach of the above warranties, Plaintiff and other members of the Class have been damaged in an amount to be determined at trial in that, among other things, they purchased and overpaid for a product that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by Mead Johnson, and were deprived of the benefit of their bargain.

## SEVENTH CAUSE OF ACTION

(Common Counts, Unjust Enrichment and Declaratory Relief)

87.    Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

88.    Mead Johnson benefited from the unlawful conduct detailed herein by receiving revenues and profits derived from the sale of the Product, which monies were had and received by Mead Johnson for the benefit of Plaintiff and the Class. Mead Johnson appreciated the benefit of the receipt of such excessive revenues and profits.  These excessive revenues and profits have been received by Mead Johnson at its request based on the promotion of the Product from monies paid, laid out and expended by Plaintiff and other members of the Class, under circumstances in which it would be inequitable for Mead Johnson to be permitted to retain these benefits based on the misleading and deceptive conduct as detailed above.  Plaintiff has made a demand for the return of such monies, which has been refused.

89.    Plaintiff and other members of the Class are entitled to the excess monies derived from the sales of the Product and the return of any monies by which Mead Johnson was unjustly enriched and the establishment of a constructive trust consisting of the benefit conferred upon Mead Johnson in the form of the revenues and profits derived from the collection of excess monies derived from the sales of the Product and the return of any monies by which Mead Johnson was unjustly enriched.

THIRD AMENDED CLASS ACTION COMPLAINT          CASE NO. 2:09-CV-5835-DSF

90.     As there is an ongoing unresolved dispute between the parties as to their legal and contractual obligations, Plaintiffs and members of the Class are also entitled to declaratory relief pursuant to, *inter alia*, California Code of Civil Procedure § 1060 and the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.     Certification of the Class, certifying Plaintiff as representative of the Class, and designating her counsel as counsel for the Class;

2.     Declaratory relief as to the rights and responsibilities of the parties as to the violations of law alleged herein pursuant to, without limitation, 28 U.S.C. §2201, *et seq.* and California Code of Civil Procedure § 1060;

3.     For equitable monetary relief pursuant to, without limitation, California Business & Professions Code §§ 17200 and 17500, *et seq.,* California Civil Code § 1780, common counts and principles of unjust enrichment;

4.     For injunctive relief pursuant to, without limitation, California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.* and California Civil Code § 1780;

5.     For actual, statutory, and punitive damages pursuant to California Civil Code § 1780, the amount of which is to be determined at trial;

6.     For damages based on breach of express and implied warranty, the amount of which is to be determined at trial;

7.     For pre- and post-judgment interest at the legal rate on the foregoing sums;

8.     For fees and costs of suit incurred pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d) and the common fund, private Attorney General and substantial benefit doctrines; and

9.     For such further relief as this Court may deem just and proper.

/ / /

THIRD AMENDED CLASS ACTION COMPLAINT          CASE NO. 2:09-CV-5835-DSF

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable as a matter of right, and for an advisory jury on all other causes of action.

DATED:  July 16, 2010        THE CONSUMER LAW GROUP

By: _____
    Alan M. Mansfield (SBN 125998)
    alan@clca.com

9466 Black Mountain Road, Suite 225
San Diego, CA 92126
Tel: (619) 308-5034
Fax: (888) 341-5048

THE MAURIELLO LAW FIRM, APC
Thomas D. Mauriello
tomm@maurlaw.com
1181 Puerta Del Sol, Suite 120
San Clemente, CA 92673
Tel: (949) 542-3555
Fax: (949) 606-9690

WHATLEY DRAKE & KALLAS, LLC
Joe R. Whatley, Jr., Esq.
jwhatley@wdklaw.com
Edith M. Kallas, Esq.
ekallas@wdklaw.com
Patrick J. Sheehan
psheehan@wdklaw.com
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070
Fax: (212) 447-7077

Attorneys for Plaintiff

27

EXHIBIT A



EX. A
Page 2





## INSTRUCCIONES PARA LA PREPARACIÓN Y EL USO



**LIPIL**

con Hierro

Fórmula para Bebés en Polvo
con Base de Leche

129 ONZAS
(366 g)

EXHIBIT B



home

friendships

education

stories

experiences

**start** .

memories

imagination

birthdays

childhood

goals

## No other formula gives your baby a better start in life."

Only Enfamil® has LIPIL®, our blend of DHA and ARA, important nutrients found in breast milk. And with worldwide breast milk average levels* of these nutrients, it's the only formula shown in published independent clinical studies to:

· **Improve brain development'**

· **Improve eye development'**

In addition, the blend of nutrients in Enfamil LIPIL supports the developing immune system.

Ask your baby's doctor about Enfamil LIPIL and visit www.enfamil.com



**Enfamil LIPIL® improves mental development by 7 points'**

*Experts agree on the many benefits of breast milk*

*Middle of worldwide breast milk averages (25th – 75th percentile range of 0.20% to 0.40% of total fatty acids), assuming about 50% of calories from fat.

' vs. prior formulation of the same product without DHA and ARA measured at 18 months for brain and 12 months for eye.



EXHIBIT C



sunsets

elephants

the stars

**You want her to see** <u>**better.**</u>

snowflakes

fireworks

movies

the ocean

flowers

ballet

## Enfamil LIPIL® improves infant vision.*



Seeing is believing. So choose Enfamil LIPIL — the only infant formula that's clinically shown to improve vision.* Babies fed Enfamil LIPIL see more clearly, and their vision is similar to that of breastfed infants.*

To learn more, call **1-800-BABY123** or visit **enfamil.com**

*vs. some routine formula without DHA and ARA. Measured at 12 months.



No other formula gives your baby a better start in life.℠

2008 Mead Johnson & Company

EXHIBIT D

Q: Why are there so many Enfamil formulas?

A: The makers of Enfamil realize that every little digestive system is different. What makes one baby smile might make another one cry. That's why Enfamil has developed an entire Enfamil Family of Formulas™. Talk to your baby's doctor or visit our product section for more information on the one that fits your baby

»Return to top

Q: What are fatty acids? Why are they important for my baby's development?

A: Certain fatty acids, like DHA and ARA, are building blocks for your baby's brain and eyes, before and after birth. Because a baby's brain develops quickly in the early months of life, many experts believe that it can be beneficial for babies to get DHA and ARA during that time.

You can pass DHA and ARA to your baby through breast milk. Or he can get these same great nutrients through Enfamil® PREMIUM™. Enfamil has LIPIL, our blend of DHA and ARA, important nutrients that promote brain and eye development. In fact, Enfamil PREMIUM is our closest formula to breast milk.

»Return to top

Q: What are DHA and ARA?

A: DHA is the scientific shorthand for docosahexaenoic acid. ARA stands for arachidonic acid. Both of these fatty acids are building blocks for your baby's brain and eyes. Enfamil has LIPIL, our blend of DHA and ARA, important nutrients also found in breast milk that promote brain and eye development.

»Return to top

Q: What is choline?

A: Choline is another nutrient found in breast milk that helps support a baby's brain development. The body uses it to strengthen the structure of cell membranes, and to help those cells communicate with each other. Choline also helps the body use fat, and control its muscles.

In 2005, Enfamil LIPIL became the first infant formula in the U.S. to increase its choline level to that of breast milk.

»Learn More About Nutrients, Including Choline
»Return to top

Q: How does my baby get DHA and ARA?

A: He gets it in utero from you. After birth, DHA and ARA are found in breast milk and in Enfamil formulas. Only Enfamil has LIPIL, a blend of DHA and ARA, important nutrients that support brain and eye development. No formula is closer to breast milk than Enfamil PREMIUM.

»Return to top

Q: How do I store my baby's formula and feed it to him?

A: Once prepared, Enfamil powder formulas can be kept in the refrigerator (35-40°F or 2-4°C), covered, for up to 24 hours and Enfamil liquid formulas up to 48 hours. A prepared bottle can be kept at room temperature for up to a total of two hours. If you choose to warm the bottle, warming time should be less than 15 minutes and the bottle should be fed to your baby within one hour. Once your baby begins feeding from the bottle, discard any formula left in the bottle within one hour

»Read About Preparing Your Baby's Bottle
»Return to top

A: Once mixed, the powdered Enfamil formulas are white in color and thinner in consistency, while the liquid formulas are slightly darker (beige or off-white) and thicker. This difference is a result of the way liquids and powders are manufactured. The cause is heat. Specifically, how it's applied to the liquids during manufacturing as part of the sterilization process

For premature infants or infants with immune problems, ready-to-use infant formulas should be used over powdered ones because ready-to-use varieties can be made commercially sterile. All forms of our formulas offer the same nutrition for your baby.

»Return to top

### Q: What temperature water should I use to prepare formula from powder or concentrated liquid?

A: Mix our concentrated liquid or powder formula with cool water (35-75° F); it should feel cool on your wrist. If you prefer, you may mix with warm water but only if you plan to feed or refrigerate the formula immediately. Warm water is about 100° F or body temperature; it should feel neutral (neither warm nor cool) on your wrist

»Access Product Instructions for Preparation, Storage, and Use
»Return to top

### Q: Can I use the microwave to warm my baby's formula?

A: Don't warm Enfamil formula in a microwave. A microwave can overheat the product or cause hot spots and result in serious burns to your baby. In addition, microwave use may cause your baby's bottles and/or plastic liners to explode or burst during heating or after they are removed from the microwave.

»Read About Preparing Your Baby's Bottle
»Return to top

### Q: How do I warm my baby's formula?

A: If you want to warm a bottle that has been in the refrigerator, run warm tap water over the bottle or place the bottle in a pan of hot (not boiling) water. Shake bottle occasionally while warming. Warming time should be less than 15 minutes. Test the formula temperature before feeding; it should not feel warm or cold when dropped on your wrist — neutral is close to body temperature. Do not use the microwave to warm formula. Serious burns may result. However, most babies don't seem to mind whether their bottle is warmed or straight out of the refrigerator. Some may prefer a consistent temperature from one feeding to the next. Once a bottle has been warmed, keep it for no more than one hour. Then discard it.

»Read About Preparing Your Baby's Bottle
»Return to top

### Q: Should I re-warm prepared formula?

A: Do not re-warm prepared formula (warming it more than once), even if the bottle has not been fed to the baby Re-warming formula increases the possibility of bacterial growth in the formula as it cools off after heating. Bacteria can be present in powder, in bottles, on your hands, or introduced in other ways during formula preparation. Follow the safest procedures when feeding your baby.

»Read About Preparing Your Baby's Bottle
»Return to top

### Q: What is the most convenient way to travel with my baby's formula?

A: Enfamil gives you lots of great feeding options for when you're on the go with your baby.

• Enfamil PREMIUM's ready-to-feed bottles, known as Nursette bottles. Just attach any clean, standard-size nipple to a Nursette bottle and you're ready to feed

EXHIBIT E





# Keep nourishing them with a full year of Enfamil LIPIL.

It may be tempting to try a less expensive store brand, but only Enfamil LIPIL is clinically proven to improve brain and eye development.

Did you know that your baby's brain grows rapidly until she's 2 years old? To feed that growth, she needs the best nutrition at birth, 3 months, 1 year and beyond. It's one of the most important things you'll provide in your baby's early years. So before you try a store brand of formula, remember that a full year* of Enfamil LIPIL goes a long way to nourishing the dreams you have for your little one



*vs prior formulation of the same product without DHA and ARA; measured at 12 months for eye and 18 months for brain



## 4 more reasons to stay with Enfamil LIPIL

**1 All infant formulas are not the same.**

The FDA sets standards for infant formula, but those primarily cover minimum nutritional levels. So formulas do vary. **Enfamil LIPIL formulas offer expert recommended levels of DHA and ARA.** Plus, our formulas are supported by independent published clinical studies

**2 Enfamil's commitment to research and innovation is unmatched.**

We employ top scientists and researchers to make sure you're feeding your baby extensively tested and up-to-date products. And we're constantly looking for ways to make our formulas even better. For example, we were the first U.S. formula company to identify the importance of DHA and ARA and to include these nutrients in our products.

En-Fact: Enfamil LIPIL's unique formulation is not available in any store brand.





**Visual acuity at 12 months**



−20/41 vision

without
LIPIL®•

with
LIPIL®

Clinical studies show that the longer babies are fed Enfamil LIPIL, the better their visual development* is at 12 months

**3** Enfami. offers proven developmental benefits and promotes health.

In independent clinica tests, Enfamil LIPIL has been proven to result in IQ scores similar to breastfed babies and improve visual development.* Plus, Enfamil contains numerous immunity-supporting nutrients that are found naturally in breast milk. Our formula offers this special combination of benefits.

**4** Your baby won't outgrow good nutrition.

When you buy Enfamil LIPIL, you're investing in your baby's health and development. And unlike those cute outfits that she'll quickly outgrow, good nutrition offers a foundation that lasts a lifetime. There are plenty of other ways to save on baby expenses without cutting back on nutrition.

Stick with the research-supported nutrition of
Enfamil LIPIL — use the attached check to save.



*vs prior formulation of the same product without DHA and ARA, measured at 12 months for eye and 18 months for brain.

The Enfamil Family Beginnings* Program uses your name and address to send you FREE gifts, discounts and baby advice. We received your name and address either directly from you or from a third-party list of people who consented to receive mailings about baby items. If you no longer wish to receive our mailings, call 1-800-BABY123.

ATTENTION RETAILER:
Endorse and deposit this check at your bank for immediate reimbursement. Endorsement of this check certifies that it was received in connection with the purchase and sale of designated Enfamil LIPIL* infant formula. Further proof of purchase may be required.

VOID IF DUPLICATED, ALTERED,
TRANSFERRED, OR SOLD.
CHECK IS VOID BEYOND EXPIRATION DATE.



Consumers Use as a coupon

Offer expires May 31, 2009

**Enfamil**

Save $5.00 on any Enfamil® Formula
Void after: May 31, 2009

**Denelle Grant**
ID Number: 004558460959

585471598

Citizens State Bank
Waverly, MN 55390

PAY TO THE ORDER OF: *Enfamil Retailer*

*Five dollars and 00/100 cents*

$5.00

limit one check per purchase.

Only good toward the purchase of designated Enfamil LIPIL® infant formula. Purchase must be greater than the amount of check. No change will be given. Consumer is responsible for all applicable sales tax. Other uses of this check constitutes fraud. VOID IF DUPLICATED, ALTERED, TRANSFERRED OR SOLD.

*Mead Johnson & Company*

⑆589471598⑆ ⑉091905295⑈ 736632⑈

# Store brands may cost less,
## but Enfamil® gives your baby more.

When it comes to nutrition and development,
you want a product you can rely on

You may have seen other products
on the store shelves that look or
even sound like Enfamil LIPIL.® But
look closer and you'll realize those
store brands lack our level of clinical
support. Enfamil LIPIL is backed
by extensive clinical trials — and
it's been proven to result in IQ
scores similar to breastfed babies
and enhance visual development.*
Nobody puts more time, effort and
resources into every can. And that's
something you can't put a price on

| | Store Brand | Enfamil LIPIL® |
|---|---|---|
| Meets minimum FDA requirements | ✔ | ✔ |
| Extensive clinical testing | | ✔ |
| Proven to result in IQ scores similar to breastfed babies | | ✔ |
| Proven to enhance visual development* | | ✔ |
| Nearly 100 years of experience | | ✔ |

*ve prior formulation of the same product without DHA and ARA, measured at 12 months for eye and 18 months for brain.

Learn more about the benefits of LIPIL at **enfamil.com/lipil**

EX. E
Page 12



Inside: Tips to help
keep your baby's
development on track,
plus $5.00 in savings.

THE CONSUMER LAW GROUP
Alan M. Mansfield (SBN 125998)
alan@clgca.com
9466 Black Mountain Road, Suite 225
San Diego, CA 92126
Tel: (619) 308-5034
Fax: (888) 341-5048

THE MAURIELLO LAW FIRM, APC
Thomas D. Mauriello
tomm@maurlaw.com
1181 Puerta Del Sol, Suite 120
San Clemente, CA 92673
Tel: (949) 542-3555
Fax: (949) 606-9690

WHATLEY DRAKE & KALLAS, LLC
Joe R. Whatley, Jr., Esq.
jwhatley@wdklaw.com
Edith M. Kallas, Esq.
ekallas@wdklaw.com
Patrick J. Sheehan
psheehan@wdklaw.com
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070
Fax: (212) 447-7077

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHELLE WEEKS, individually and on behalf of all others similarly situated,** | ) Case No.  **2:09-cv-5835-DSF (CWx)** <br> ) <br> ) **CLASS ACTION** <br> ) |
| **Plaintiffs,** | ) **PROOF OF SERVICE** <br> ) |
| **v.** | ) **PARTY SERVED:  Defendant MEAD** <br> ) **JOHNSON & COMPANY** |
| **MEAD JOHNSON & COMPANY,** | ) <br> ) |
| **Defendant.** | ) <br> ) |
| _____ | ) |

I, the undersigned, declare under penalty of perjury that I am employed with THE CONSUMER LAW GROUP, whose address is 9466 Black Mountain Road, Suite 225, San Diego, California 92126.  I am over the age of eighteen years and not a party to this action; that I served the below named persons the following documents:

1

1 | THIRD AMENDED CLASS ACTION COMPLAINT

2

3 [ ]   By personally delivering copies to the person served at the following address:

[ ]   Via the Court's electronic notification system to the addresses listed below.

4

[ ]   Via electronic mail to the addresses listed below.

5

6 | **SEE ATTACHED SERVICE LIST**

7 [ X ]   By placing a copy in a separate envelope, with postage fully prepaid, for each
address named below and depositing each for collection and mailing pursuant
8 to the ordinary business practice of this office, which mail is deposited with
the U.S. Postal Service on the same day at San Diego, California.

9

[ ]   By Overnight Mail by placing an Overnite/Federal Express Envelope
10 addressed to each of the persons on the service list attached hereto and
depositing said envelope in the Overnite/Federal Express Pickup Boxes
11 located at business Park Way and Carroll Canyon Road in San Diego,
California 92131.

12

Executed this ___16th___ day of ___July___, 2010 at San Diego, California.

13

14

15 SALLY CORMIER

16

17

18

19

20

21

22

23

24

25

26

27

28

2

PROOF OF SERVICE                              CASE NO. 2:09-CV-5835-DSF (CWX)

## SERVICE LIST

| | |
|---|---|
| Dennis S. Ellis<br>dennisellis@paulhastings.com<br>Joshua G. Hamilton<br>joshuahamilton@paulhastings.com<br>Nicholas Begakis<br>nickbegakis@paulhastings.com<br>PAUL HASTINGS JANOFSKY &<br>WALKER LLP<br>515 South Flower Street, 25th Fl.<br>Los Angeles, CA 90071-2228<br>Tel: (213) 683-6000<br>Fax: (213) 627-0705<br><br>Attorneys for Defendant MEAD<br>JOHNSON & COMPANY | WHATLEY DRAKE & KALLAS,<br>LLC<br>Joe R. Whatley, Jr., Esq.<br>jwhatley@wdklaw.com<br>Edith M. Kallas, Esq.<br>ekallas@wdklaw.com<br>Patrick J. Sheehan<br>psheehan@wdklaw.com<br>1540 Broadway, 37th Floor<br>New York, NY 10036<br>Tel: (212) 447-7070<br>Fax: (212) 447-7077<br>(VIA EMAIL ONLY)<br><br>Co-Counsel for Plaintiff |
| MAURIELLO LAW FIRM APC<br>Thomas d. Mauriello<br>tomm@maurlaw.com<br>1181 Puerta Del Sol, Suite 120<br>San Clemente, CA 92673<br>Tel: (949) 542-3355<br>Fax: (949) 606-9690<br>(VIA EMAIL ONLY)<br><br>Co-Counsel for Plaintiff | |

3